Mr. Justice Ceicock
dissenting, gave the following op,-aion :
In order to determine the question under consideration, it is only necessary to iv.ve a correct statement of the facts, so that the relation of the parries in interest to each other may be clearly understood, Joseph Guerrlnean, of this city, a shop-keeper, having suddenly absented himself, ills creditors, about thirty in number, issued out attachments against him on the 31st December, 1816, and the 'wo or three following days. Among the rest were firen'r *310 ü? Moses, whose attachment was issued on the 3d January, 1817. The sheriff, by virtue of some of the attachments, took possession of the goods on the 31st December, that is, soon alter 12 o’clock, on the night of the 30th Der cember, which was Sunday. The return of the sheriff was, that he had levied on the goods of Joseph Gnerri-neau, in the store in King-street, and also four negro slaves, and that he had served the present claimant with a copy of the writ agreeably to the act. On the 2d of January, 1817, the present claimant filed his return in the following words: “ Etienne Forretier being duly sworn, maketh oath, that on or about the 28th day of December last, he did, for due and valuable consideration, become the purchaser of all the store and stock in trade, then belonging to Joseph Guerrimai.situate in King-street, (No. 42) ; that this deponent did pay unto the said Joseph Guerrineau, for the said goods, the sum of five thousand dollars in cash, and the sum of two thousand six hundred dollars and twenty cents by bis bond, payable in one and two years by equal instalments. That the said Joseph Guerrineau did also sell and dispose of to this deponent, the following negro slaves named John, Louis, a female slave, and her female child named Juliet, for the sum of twelve hundred and fifty dollars : and the said Joseph Guerrineau did also, on or about the same period, sell, assign, and set over unto this deponent, the unexpired term of a lease of a lot cf land, situate in King-street aforesaid : and this deponent doth, upon oath, deny that the house, the goods therein contained, or the negroes aforesaid, do belong to the said Joseph Guerrineau, who is said to be absent, and without the limits of the said state; and that he, this deponent, hath not in his possession any monies, goods, chattels, debts or books of accounts belonging to the said Joseph Guerrineau; by which it appeared that he claimed the goods and negroes attached by the sheriff. The attachment act authorizes the issuing a writ when the person shall abscond, to attach the monies, goods, fkc. of the absent debtor, in the hands of any person or persons whatsoever, *311 and directs that the sheriff should summon such persons in whose hands any goods are found, by serving him with a copy of the writ, with 1 a notice thereon indorsed, require ing him to appear before the justices to shew cause, if he, can, why the goods should not be adjudged to belong to the absent debtor. “ But if the person so summoned shall appear at the return ol the said writ, and lay claim to the said monies, goods, &c. if the plaintiff rest satisfied therewith, then the attachment shall be discharged, but if not, then the claimant or person so summoned as aforesaid shall be put to plead the same, and the matter e-ball be tried by a jury forthwith, or at such other court and time as then shall be appointed by the justices, and the party that shall be cast in the same, shall pay to the prevailing party such reasonable costs and charges as shall be allowed and taxed by the chief justice aforesaid.” Under this clause, an issue was made up to try the question, whether the goods were the property of the absent debtor or those of the claimant, and the form pursued was that of a feigned issue on a wager between the claimant and the creditors, be asserting that the goods were bis, and they, that they were not. In this proceeding, which was adopted by the counsel for the claimants, he makes 'the claimant plaintiff, and all the attaching creditors, defendants. This matter had been depending from about May or June, 1817, until the last court in June, 1820, there having been one mis-trial, when it came on before me for trial. And a motion' was made to admit the defendants, (as they had been made) Broxvn Moses, as witnesses. It appeared that they had failed in business since the issuing oí the attachment, and that Broxvn had taken the benefit of the insolvent debtor’s act. It also appeared that they had received full compensation from a Mr. Matheson for the debt due by Guerrineau to them, and that their interest in it had been transferred to him. A judgment had been obtained on the demand, and was standing apparently in their right, I therefore required that Moses should, on the back of his record, acknowledge a transfer of the judgment to Mathe- *312 son, (Brown, by bis assignment, for the benefit of creditors, as well as by the alleged transfer to Matheson, had before divested himself 'of all interest in the judgment,) which was done. Matheson then gave a release to Broxvn G? Móses from all future responsibilities, as to the assignment of said judgment, or the debts on which it was founded. A motion was then made to strike out the defen. • dants and make them witnesses, which was done ; and it is now objected that it was improperly done ;
1st. Because they were defendants, and could not be stricken out without the plauitiiPs leave ; and
2dly. Because they are directly interested in the suit; ami
3dly. Because, if not to be gainers by the immediate issue before the court, the verdict in this case might be gi • ven in evidence ior them in future actions, and that this establishes a sufficiently direct interest to exclude them.
The first ground of objection must vanish the moment wt advert to the nature of the proceedings. This was an in-terpleader to try the question immediately arising in the progress of a cause. The course of proceeding is left to the court, that is, the legislature has not directly or indirectly pointed out an)*: the words are, the claimant shah “ be put to plead.” I do not mean by any observations I shall make to object to the mode resorted to in this cr am other case that might be adopted, except so far as to say. that neither party has a right to give it such a character as to prevent the ohjpct of justice. Í therefore say that the claimant here had no right to make himself a plaintiff, and the creditors, defendants : for tu my mind, it is clear, that after the return made by the claimant, the next step to be taken, where it is disputed, must be by the creditors, who, according to the forms I have scon observed, file a suggestion setting forth the objections to the return, and then the claimant is put to plead. They then are, as to the question or .issue to be tried, (-whether the goods are the property of the absent debtor or that of the claimant,) the actors. From this view, X first deduce that the strict ruler- *313 of law were wholly inapplicable to this interlocutory proceeding ; and secondly, that if they are to be applied, the creditors being the actors, according to any rule in such case, might withdraw. May not a ci-editor at one time believe that the return of a person in possession of goods was false, and afterwards be satisfied that it is correct ?-¿» May not a creditor find that his attachment was too late 1 to be beneficial to him even though all the goods be condemned as the property of the absent debtor ? And would knot in these and like cases be hard and unjust that a creditor who became a party to this interlocutory proceeding, merely from having been one of the attaching creditors, and by the act of the claimant should not be at liberty to withdraw upon the usual terms of a discontinuance which were observed in this case', viz : tbe payment of costs ? I think the answer is obvious. But suppose them really defendants ; may n'ot a defendant disclaim when he is sued for the recovery of any property alleged to be in his hands or possession, or which is claimed by him ?
As to the second and third grounds of objection, I will consider them together, as they are in fact one and the same. The witnesses were not then interested in the immediate case; they could neither gain nor lose by the verdict.1 It was said that their evidence would increase the fund out of which tbeir judgment was to be paid. It was ho longer tbeir judgment; tbeir interest was gone, and they were released from all responsibilities; it was therefore immaterial to them whether the judgment was ever paid or not. Now I will advert to the other criterion of interest on which it is said this point entirely rests. Could the verdict in the collatex-al issue be given in evidence, either for or against tbe witnesses, Brown &? Moses, in any other suit to which they were liable, or which they might bring ? And here I would premise that we are not permitted to range in the field of fancy, and suppose possible actions : But the good sense of tbe rule is, that it must be clear to the court, that in some suit which could be main-mined or was pending, such verdict might be given in evi *314 dence for or against the person offered as a witness. The question of competency is one for the court, and they are not astute to exclude testimony, nor is it proper that they should be so. “ It is certain that courts of justice now generally adopt the principle, that it is wiser to hear witnesses than at once to reject them unheard and untried; and they endeavor, as far as it is consistent with former decisions, to receive the testimony of witnesses, leaving the credibility to the jury.” (Phillips, 35,) “The rule that a witness is not competent, if the verdict can be given in evidence, either for or against him in a future suit, is of all the rules the most comprehensive, and at the same time the most accurately defined. Lord Kenyon seems, (says the writer) to consider it as the only true test of competency. In the case of Brent and Baker, the true question is, Is the witness really interested in the cause ? Sometimes lie says counsel go further.’ But the general rule involves in it all others, and amounts to this, whether the record in the case will effect his interest ? And again he says, I think the principle is this, — if the proceedings in the cause cannot be used for him, he is a competent witness, although he may have wishes on the subject. Mr. Justice Biiller says, the true line 1 take to be this, is the witness tp gain or lose by the event of the cause 1 And Ch. B, Gilbert lays down the rule thus : The law looks upon a witness as interested, when there is a certain benefit or disadvantage attending the consequence of the cause one way. And Mr. Justice Buller in another case says, I take the rule to be this : If the witness can derive jio benefit from the cause before the court, (meaning a direct benefit) he is competent.
Having thus clearly ascertained the rulé, I now proceed to apply it; and in order to do so correctly, we must look to the parties in interest before the court; for, as before observed, we are not to enter the field of conjecture. A great Judge, Lord Hardrwicke, indeed has gone so far as to say.j the suit in which the verdict may be given in evidence must be judicially known, that is, commenced:— *315 for says he, who knows that a man will commence every suit which he may commence. But I will take the rule in the utmost latitude in which it has been used. The parties in interest are the creditors of Guerrineau, among whom are the witnesses, Brown &? Moses; Guerrineau, himself, the claimant Etienne Forretier, and Matheson, to whom the demand of Brozun ci? Moses was transferred. — . To begin with the last person, could Matheson awe. Brown id? Moses in the event of the judgment not being paid ? He is precluded by his release from all responsibilities. Could Guerrineau- commence any action? By the 11th section of the act, it is declared, that “ in case any absent debtor against whom any attachment is issued by virtue of this act, shall appear within two years, and disprove the debt, duty qf demand which shall have been recovered against him, he shall recover against the plaintiff in attachment, the full damages which he may have sustained for his unjust vexation, with treble costs of suit; provided, he gave notice in the Gazette that lie is.about to leave the state.” Now it did not appear that such notice had been given ; but if it had been given, and the action would lie, it is only in case the debt is disproved; and in such case, the right to sue would not depend on this collateral issue, nor could it be effected by it, consequently the verdict could not be given in evidence. The abstract question in such action would be, was the debt unjust? But if the goods were Forretier'1 s, no damage could result against Guerri-neau by attaching them, and the evidence of Brown cs? M.o~ when it went to shew the goods in Guerrineau, would have had the effect of giving him the action rather than taking it away; consequently would have been against their interest. But it is said, qnd with confidence, that if the goods were Forretier’’s he might sue Brown &? Moses for a trespass in taking them, and the verdict in the collateral issue might have been given in evidence. But I lay it down, without the shadow of a doubt, that no such action could have been maintained against them. No action can be maintained against a man who uses the process *316 of law in a legal manner. If a doubt could exist upon this point, the'facts of the case shew at all events that no suit could be maintained against Brown Moses by Guerri-neait, for a trespass ; for by adverting to the lodgment of their attachméut, it will be found that it was one or two days after the return of For retier. It is then clear that if a trespass had been committed in taking the goods, Brown it? Moses could not be accountable ; for the goods were in the custody of. the law and the officer, before the attach ment of Broxpn & Moses was lodged.